Donna JONES *v.* Wayne JONES

CA 89-126                                               777 S.W.2d 873

Court of Appeals of Arkansas
Division II
Opinion delivered October 18, 1989
[Rehearing denied November 8, 1989.]

*Peel & Eddy*, by: *Richard L. Peel*, for appellant.

*Mobley & Smith*, by: *William F. Smith*, for appellant.

JUDITH ROGERS, Judge. This is appellant's second appeal in this court concerning the chancellor's division of the parties' marital property upon their divorce. Appellee, Wayne Jones, is a certified public accountant and owns one-third of the stock in the accounting firm of Jones, Rose & Lawton, P.A. The stockholders have a buy-sell agreement which values each stockholder's one-third interest at $30,000.00. At the first trial, appellee valued his one-third interest in the accounting firm at $30,000.00 based on his buy-sell agreement, and the chancellor accepted this valuation and awarded appellant $15,000.00 as her marital interest. Appellant appealed the chancellor's determination, *Jones* v. *Jones*, 22 Ark. App. 267, 739 S.W.2d 171 (1987), and this court reversed and remanded the chancellor's decision because he did not allow appellant to proffer evidence relevant to the firm's value. The only issue upon retrial was the value of appellee's interest in the accounting firm, and after hearing disputed testimony that appellee's interest in the firm ranged from $30,000.00 to $227,535.00, the chancellor again found appellee's interest to be worth $30,000.00 and awarded appellant half of this amount. In this appeal, appellant asserts that the chancellor's determination that the value of appellee's interest in his accounting firm is $30,000.00 is clearly erroneous. We affirm the decision as hereinafter modified.

█ Cases on appeal from the chancery court are tried *de novo*, but this court will not reverse the findings of the chancellor unless the findings of the chancellor are clearly erroneous or clearly against the preponderance of the evidence, giving due deference to the chancellor's superior position to determine the credibility of the witnesses and the weight to be given their testimony. *Shoptaw* v. *Shoptaw*, 27 Ark. App. 140, 143, 767 S.W.2d 534, 537 (1987).

The testimony was sharply controverted at trial. Appellee and his witnesses testified that $30,000.00 was a fair valuation for appellee's interest in his firm. Appellant's expert testified as to several different methods which he felt were proper for evaluating an accounting practice and, depending on the methods he used, valued appellee's practice at amounts ranging from $141,247.00 to $227,535.00. Appellant's other witnesses both testified that the standard method used for evaluating an accounting practice was to use a percentage, usually between 75% to 125%, of gross fees. Appellee admitted his firm has used this method twice in the past when acquiring other accounting practices but maintained neither of these other acquisitions represented the purchase of a minority interest. The firm's gross fees for the fiscal year ending January 31, 1986, were $409,767.00, and at the time appellee filed for divorce, he owned one-third of the stock in the firm.

█ It is the province of the trier of fact to determine the credibility of witnesses and resolve conflicting testimony. *Shoptaw*, 27 Ark. App. at 142, 767 S.W.2d at 537. Here, the chancellor obviously placed greater weight upon the testimony of appellee and his witnesses in determining the value of appellee's interest, and we do not find that his decision was clearly erroneous. Nevertheless, we do find two of the reductions about which appellee testified and which were listed on a worksheet that the firm used to compute a stockholder's interest for purposes of the buy-sell agreement were irrelevant for purposes of determining appellee's interest here and should be deleted.

At trial, appellee introduced into evidence a worksheet that described how the firm arrived at the $30,000.00 valuation for a partner's stock.

| | |
|---|---:|
| Gross fees | $ 409,767. |
| Reductions: | |
| Revocation of purchase of John Barnards practice | (50,000.) |
| Non-recurring services (estates, special projects, etc.) | (40,000.) |
| Balance | $ 319,767. |
| Factor for accounts lost on sale of business 32% | (102,325.) |
| Balance | $ 217,422. |
| Debt (excluding equipment debt) | (58,898.) |
| Balance | $ 158,544. |
| Minority interest discount (lack of salability) 30% | (47,563.) |
| Balance | $ 110,981. |
| Value of one third interest | $ 36,993. |
| Rounded down for purposes of Buy-Sell agreement to | $ 30,000. |

In describing this exhibit, appellee stated that the firm began with a gross fee figure of $409,767.00 for the fiscal year ending January 31, 1986, and reduced this figure by $50,000.00 representing the revocation of a purchase agreement to buy the accounting practice of John Barnard, and $40,000.00, representing some large fees, such as estates and special projects, which would not be recurring. He testified the 32% reduction, $102,325.00, represents accounts the firm would lose if a partner leaves the firm; and the 30% reduction represents the limited marketability a minority stockholder's interest is worth.

We find the chancellor erred in accepting the 32% reduction ($102,325.00) which appellee alleged represented accounts the firm would lose upon the sale of a one-third interest. While this may be a valid reduction for appellee to use for purposes of a buy-sell agreement, we do not find it applicable to the situation here. At trial, there was no evidence that appellee was in the process of selling his interest in the firm or was contemplating doing so. Moreover, the 30% minority interest discount, listed on the worksheet as $47,563.00, which the sellor

also accepted included a discount for lack of salability. We also find the chancellor erred in ignoring the $36,993.00 which appears on the worksheet as the value of a one-sided interest in appellee's firm and accepting the lower 30,000.00 figure as the value. The $30,000.00 figure resulted from rounding down the true $36,993.00 figure to $30,000.00 for purposes of the buy-sell agreement. No evidence was offered to justify this $6,993.00 reduction here, which operated to reduce appellant's marital share, and we hold it was error to accept this reduction.

Accordingly, we delete the 32% reduction for accounts lost on the sale of business and therefore modify the decree to increase the value of appellee's one-third interest to $60,869.00 and to award appellant $30,434.50 as her marital interest in appellee's accounting practice.

Affirmed as modified.

MAYFIELD and COOPER, JJ., agree.