## AMERICAN GREETINGS CORPORATION, et al. *v.*
## Pam GAREY

CA 97–590                                        963 S.W.2d 613

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered February 25, 1998

*Rieves & Mayton*, by: *W. Terry Smith, Jr.*, for appellants.

*William Lee Fergus*, for appellee.

JOHN MAUZY PITTMAN, Judge. The appellee, who was born without any fingers on her right hand, filed a workers' compensation claim on December 6, 1993, alleging that she developed numbness and pain in her left hand while working for the appellant employer. The employer accepted the claim as compensable, but ultimately denied medical expenses and benefits associated with the evaluation and treatment of Dr. Phillip Wright, asserting that he was not an authorized physician and that his treatment was not reasonably necessary. After a hearing, the Commission found that appellee was properly referred to Dr. Wright, that the treatment provided by Dr. Wright was reasonable and necessary, and that appellee was entitled to temporary total disability benefits for the period during which Dr. Wright removed her from work. From that decision, comes this appeal.

For reversal, appellants contend that the evidence does not support the Commission's findings that Dr. Wright's treatment is reasonably necessary; that Dr. Wright's treatment resulted from a valid referral; or that appellee was entitled to temporary total disability benefits for the six-week period that Dr. Wright removed her from work. We affirm.

In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. *Johnson v. Hux*, 28 Ark. App. 187, 772 S.W.2d 362 (1989). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Nelson v. Timberline International, Inc.*, 57 Ark. App. 34, 942 S.W.2d 260 (1997). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. *Min-Ark Pallet Co. v. Lindsey*, 58 Ark. App. 309,

950 S.W.2d 468 (1997). The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *McMillan v. U.S. Motors*, 59 Ark. App. 85, 953 S.W.2d 907 (1997).

Viewing the evidence, as we must, in the light most favorable to the Commission's findings, the record reflects that appellee, who was 37 years old at the time of the hearing, was employed by appellant employer for seven years filling orders. Although she was born without any fingers on her right hand, she was considered to be an exemplary worker and fulfilled her production quota without difficulty for the first five years of her employment. After working in this capacity for five years, however, she began experiencing numbness and pain in her left hand, which became progressively worse until she was taken completely off work for six weeks on the recommendation of Dr. Wright. This six-week cessation of all hand activity greatly improved appellee's condition.

■ ■ Arkansas Code Annotated § 11-9-508(a) (Repl. 1996) requires employers to provide such medical services as may be reasonably necessary in connection with the employee's injury. What constitutes reasonably necessary treatment under this section is a fact question for the Commission. *Wright Contracting Co. v. Randall*, 12 Ark. App. 358, 676 S.W.2d 750 (1984). In the case at bar there was evidence that Dr. Wright was a qualified specialist in whom appellee had confidence and that his recommendations greatly improved appellee's worsening condition. Given this evidence, we cannot say that the Commission erred in finding his services to be reasonably necessary in connection with appellee's compensable injury.

■ ■ Nor do we agree with appellants' argument that the Commission erred in finding that appellee was referred to Dr. Wright. Under Ark. Code Ann. § 11-9-514(b) (Repl. 1996), routine treatment by a physician other than the claimant's authorized treating physician shall be at the claimant's expense. However, this section is inapplicable if the authorized treating physician refers the claimant to another doctor for examination or treatment. *See Electro-Air v. Villines*, 16 Ark. App. 102, 697 S.W.2d

932 (1985). We held in *Electro-Air* that a referral had indeed occurred where the evidence showed that a claimant's treating physician had referred her to a psychiatrist, despite the fact that the Commission had improperly labeled it a change of physician. In *White v. Lair Oil Co.*, 20 Ark. App. 136, 725 S.W.2d 10 (1987), we again held that a treating physician referring his patient to a specialist constituted a valid referral rather than an unauthorized change of physicians. The situation in the case at bar is virtually identical. Appellee's treating physician, Dr. Woloszyn, recommended that appellee obtain continued care from a hand specialist, and provided her with the names of two qualified specialists in that field: Dr. Wright and Dr. Bourland. Appellee obtained treatment from Dr. Wright based on this recommendation. We hold that this constitutes substantial evidence to support the Commission's finding that appellee was referred to Dr. Wright.

Finally, appellants contend that the Commission erred in finding that appellee was entitled to temporary total disability benefits for the six weeks she was removed from work by Dr. Wright. Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990). Arkansas Code Annotated § 11-9-102(13) (Repl. 1996) defines "healing period" as that period for healing of an injury resulting from an accident. The healing period continues until the employee is as far restored as the permanent character of his injury will permit, and if the underlying condition causing the disability has become stable and if nothing in the way of treatment will improve that condition, the healing period has ended. *Carroll General Hospital v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual determination for the Commission which will be affirmed on appeal if supported by substantial evidence. *Id.* Here there was evidence that appellee suffered from overuse syndrome affecting her left hand, a condition that improved after she stopped using her hand altogether for six weeks on the recommendation of Dr. Wright. Although there was evidence to the

contrary,[1] questions of weight and credibility are within the sole province of the Workers' Compensation Commission, *Min-Ark Pallet Co. v. Lindsey, supra,* and we cannot say that there is no substantial evidence to support the Commission's finding.

Affirmed.

NEAL, AREY, JENNINGS, and STROUD, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting. I agree that the first two points on this appeal should be affirmed (i.e., that substantial evidence supports the Workers' Compensation Commission findings that: (1) medical treatment recommended and provided by Dr. Phillip Wright was reasonably necessary; and (2) that appellee was referred to Dr. Wright by Dr. John Woloszyn). However, I believe that the Commission should be reversed on the third point because the finding that appellee is entitled to temporary total disability (TTD) benefits for the six-week period following August 22, 1995, is not supported by substantial evidence.

Because of a birth defect, Pam Garey has no fingers on her right hand. She worked for American Greetings as an order filler in the Osceola plant for five-and-a-half years before she began experiencing numbness in her left hand. That condition worsened over time, and was diagnosed as an overuse syndrome of her left hand. Surgery is not indicated based upon repeated neurological examinations and tests, but job reassignment to work that does not require chronic repetitive use of the hand was recommended by Dr. Woloszyn. That approach worked until one of appellee's supervisors assigned her back to repetitive work which caused her symptoms to worsen. Her doctor directed that the job restrictions be followed, and that she remain off work for six weeks after appellee and her husband suggested that course of action to him.

---

[1] There was evidence to support the narrative and conclusions presented by the dissent. However, the issue on appeal is not whether the evidence would have supported a contrary finding. *White v. Frolic Footwear,* 59 Ark. App. 12, 952 S.W.2d 190 (1997). The findings that the Commission actually made are supported by substantial evidence; consequently, we must affirm. *Id.*

We held in *Mad Butcher v. Parker*, 4 Ark. App. 124, 628 S.W.2d 582 (1982), that TTD benefits are awarded only for the period of time when a worker is within her healing period and is incapable of earning wages. The healing period is that time when the body is healing and an employee is unable to perform remunerative labor with reasonable consistency without pain and discomfort. In *Mad Butcher*, we stated that the mere persistence of pain does not prevent a finding that the healing period has ended so long as the underlying condition has stabilized. *Id.*

*Mad Butcher* requires us to reverse the Commission on two fronts. First, when Dr. Wright agreed that appellee could remain off work for six weeks beginning August 22, 1995, there was no evidence that the underlying character of her overuse condition had not stabilized. As early as February 15, 1995, Dr. Woloszyn confirmed that repeat neurological studies demonstrated no appreciable difference in appellee's condition from what it had been a year earlier, and that she simply needed retraining for work that did not require chronic repetitive use of her hand. In an April 5, 1995, letter, Dr. Woloszyn verified that appellee was not entitled to a permanent impairment rating because there were no objective findings to support it, and that appellee's symptoms diminish when she is assigned to different work. He then indicated that he had no additional treatment to offer. By letter dated May 21, 1995, Dr. Woloszyn agreed to work restrictions proposed by the employer and indicated that the restrictions were permanent. Thus, there is no proof that the underlying character of appellee's condition was not stable or was in the process of improving in August 1995 when Dr. Wright directed her to take six weeks away from work.

Secondly, there is no proof that appellee was totally incapacitated from earning wages during the six-week period after August 22, 1995. Aside from the previously referenced reports from Dr. Woloszyn, the record shows that appellee was working at a job that he approved when she suggested to Dr. Wright that she take six weeks off.

I would reverse the award.